# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| STEVEN PEREZ, | ) |
| | ) |
| Petitioner, | ) |
| | )     **No. 13 C 4478** |
| v. | ) |
| | )     **Chief Judge Rubén Castillo** |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Steven Perez ("Petitioner") is serving a 60-year sentence for his participation in a racketeering conspiracy. Presently before the Court is his motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (the "petition"). (R. 23, Am. Pet.) For the reasons set forth below, the petition is denied.

## BACKGROUND

The facts underlying Petitioner's conviction are set forth in detail in the prior opinions of the U.S. Court of Appeals for the Seventh Circuit and this Court. *See United States v. Perez*, 673 F.3d 667 (7th Cir. 2012); *United States v. Morales*, 655 F.3d 608 (7th Cir. 2011); *United States v. Benabe*, 654 F.3d 753 (7th Cir. 2011); *United States v. Benabe*, 436 F. App'x 639 (7th Cir. 2011) (per curiam); *United States v. Delatorre*, 572 F. Supp. 2d 967 (N.D. Ill. 2008); *United States v. Delatorre*, 522 F. Supp. 2d 1034 (N.D. Ill. 2007); *United States v. Delatorre*, 508 F. Supp. 2d 648 (N.D. Ill. 2007); *United States v. Delatorre*, 438 F. Supp. 2d 892 (N.D. Ill. 2006). They are repeated here only generally.

In 2002, state and federal authorities began an intensive investigation into the Insane Deuces street gang after one of its members, Orlando Rivera, agreed to serve as a confidential

informant. *Morales*, 655 F.3d at 615. Petitioner was among sixteen men indicted on various racketeering-related charges in connection with the investigation. *Id.* The evidence adduced at trial showed that the gang was affiliated with the Folks, a national network of local gangs. *Id.* The government's investigation focused on the Aurora Deuces, a chapter of the Insane Deuces with a significant presence in Aurora, Illinois. *Id.* As of 2002, the Aurora Deuces had become bitter rivals of the Latin Kings (also referred to as the "Kings"). *Id.* at 616. This rivalry led to "frequent and escalating violence." *Id.*

The Insane Deuces had its own set of "leyas," or laws, as well as a detailed hierarchy. *Id.* There were three tiers of membership within the gang: Seniors, Juniors, and Shorties. *Id.* Shorties were the gang's youngest members, who carried out most of the gang's activities, including shootings and other acts of violence, as well as selling drugs to fund the gang. *Id.* Shorties were often juveniles. *Id.* By participating in gang activities, Shorties could work their way up to becoming Juniors, who were responsible for the gang's day-to-day operations. *Id.* Juniors were the leaders of the gang, and they directed the gang's activities, which included selling drugs, carrying out "missions" (attacks on rival gang members), protecting and supporting fellow gang members and their families, and punishing gang members who violated the gang's rules. *Id.* Seniors were "longstanding members of the gang whose age and accomplishments made them the leaders, broad-scope planners, and advisors for the gang." *Id.* Seniors directed Juniors on larger issues, but they were more removed from the gang's day-to-day activities. *Id.*

Working with law enforcement, Rivera reported extensively on the gang's activities, conducted controlled buys of narcotics and firearms from gang members, and surreptitiously recorded meetings and conversations of gang members. *Id.* The intelligence gathered through Rivera produced evidence regarding "four murders, eleven attempted murders, two solicitations

to commit murder, other shootings, and narcotics distribution incidents—all of which the Deuces perpetrated in 2002 alone." *Id.* A federal grand jury returned a multi-count indictment against Petitioner and fifteen other gang members. *Id.* One of them pled guilty, and another remains a fugitive. *Id.* The Court divided the remaining fourteen defendants into two groups for purposes of trial. *Id.* at 619. Petitioner was originally grouped with the "less major players," who were to be tried before U.S. District Judge Harry D. Leinenweber. *Id.*

In April 2008, Judge Leinenweber commenced the trial of the less major players. *United States v. Morales*, No. 03 CR 90, 2009 WL 1456567, at *1 (N.D. Ill. May 22, 2009). A mistrial was declared shortly after opening statements, however, when several jurors asked to be removed from the jury. *Id.* The retrial was scheduled for October 2008. *Id.* In the interim, the trial of the other group of defendants—the so-called "leaders" of the gang—proceeded before this Court, and all but one of the defendants were convicted of racketeering conspiracy and other offenses.[1] *Benabe*, 654 F.3d at 757.

In October 2008, the retrial of the less major players was held. *Morales*, 655 F.3d at 619. The trial spanned more than two months, during which time the government presented extensive witness testimony, recordings of gang meetings, and forensic evidence establishing the gang's activities, rules, and purpose. *Id.* Rivera described the inner workings of the gang, explained what was said in the various recorded meetings, and described the gang's organization and means of rule enforcement. *Id.* Two other former gang members, Lorenzo Becerra and Akeem Horton, testified on behalf of the government regarding the gang's activities and the scope of participation of each individual defendant. *Id.* The government also presented testimony from a variety of police officers and federal agents, as well as several victims of the violence perpetrated

---

[1] The jury could not reach a verdict as to defendant Harold Crowder. *Benabe*, 654 F.3d at 757 n.1. He was subsequently retried with the other group of defendants and convicted. *Id.*; *Morales*, 655 F.3d at 615.

3

by the gang. *Id.* After a week of deliberations, the jury returned its verdicts finding all the

defendants guilty of racketeering conspiracy, with the exception of Petitioner. *Id.* The jury could

not reach a verdict as to Petitioner, and a mistrial was declared as to him. *Morales*, 2009 WL

1456567, at *1.

Petitioner was subsequently retried on his own before this Court. *Perez*, 673 F.3d at 668.

Much of the same evidence was presented regarding the gang's racketeering activities, including

the testimony of Rivera and other cooperating gang members and the undercover recordings of

gang meetings. This evidence established as follows:

> Perez was involved in three attempted murders as a member of the Insane Deuces
> . . . . The first two attempted murders occurred on January 20, 2002, when
> brothers Gerardo and Rodolpho Rios were mistaken for members of a rival street
> gang and shot while walking along the street. Gerardo was struck in the leg;
> Rodolpho in the arm and back. The third attempted murder occurred on May 11,
> 2003, when Perez rang the doorbell of the Rivera family home looking for
> Orlando Rivera—a member of the Insane Deuces who was cooperating with
> police. But Orlando had already moved out of the home for protection, and
> Orlando's father, Tomas Rivera, answered the door instead. Perez shot Tomas in
> the arm as soon as he opened the door, before being chased away by another
> family member.

*Id.* At the close of the evidence, the jury found Petitioner guilty of racketeering conspiracy. *Id.* In

a second round of deliberations, the jury returned special verdicts for the purpose of sentencing

enhancement, finding it "proven" that Petitioner was responsible for the attempted murders of

Tomas Rivera and both Rios brothers. *Id.* The jury found as "proven" that Petitioner had

personally discharged the firearm that caused Tomas Rivera's injury, but "not proven" that

Petitioner had personally discharged the firearm that caused the Rios brothers' injuries. *Id.* This

Court subsequently sentenced Petitioner to 60 years in prison. *Id.*

On appeal, Petitioner raised one argument—that the Court violated his rights under the

Grand Jury Clause of the Fifth Amendment by permitting the government to redact certain

portions of the indictment that was sent back with the jury. *Id.* at 669. In an opinion issued on March 12, 2012, the Seventh Circuit rejected this argument and affirmed Petitioner's conviction and sentence in all respects. *Id.* at 669-70. Petitioner did not seek certiorari with the U.S. Supreme Court. (R. 1, Pet. at 2.)

On June 12, 2013, Petitioner filed a petition to vacate his sentence under 28 U.S.C. § 2255. (R. 1, Pet.) The Court denied the petition without briefing. (R. 5, Order.) Petitioner moved for reconsideration of that ruling (R. 7, Mot.), and on reconsideration, the Court concluded that Petitioner could proceed further if he filed an amended petition that clearly articulated his grounds for relief.[2] (R. 16, Order.) Thereafter, Petitioner filed an amended petition asserting five grounds of ineffective assistance of appellate counsel. (R. 23, Am. Pet.) The Court ordered briefing on the petition, which has now been completed. (*See* R. 27, Gov't's Resp.; R. 29, Pet'r's Reply.)

## LEGAL STANDARD

"To succeed on a § 2255 petition a convicted defendant must show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *see also* 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations," such as where "an error of constitutional or jurisdictional magnitude" has occurred, "or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013).

---

[2] Petitioner also filed a notice of appeal, which the Seventh Circuit later dismissed at his request. (R. 9, Notice of Appeal; R. 20, 7th Cir. Order.)

## ANALYSIS

### I.    Timeliness

The government first argues that the petition was untimely and cannot be considered on

the merits. (R. 27, Gov't's Resp. at 1-3.) A petition filed under 28 U.S.C. § 2255 "is subject to a

one-year time limitation." *Clay v. United States*, 537 U.S. 522, 524 (2003). The limitations

period begins to run on the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Petitioner's claims of ineffective assistance of counsel do not involve a

newly recognized constitutional right, nor does Petitioner claim that he has newly discovered

evidence or that some governmental impediment prevented him from filing his petition on time.

By process of elimination, Section 2255(f)(1) applies. Thus, Petitioner had one year from the

date his conviction became final to file his petition.

Petitioner's conviction was affirmed by the Seventh Circuit on March 12, 2012. *Perez*,

673 F.3d at 667-70. He had 90 days from that date to file a petition for certiorari with the

Supreme Court. *See* SUP. CT. R. 13(1) ("[A] petition for writ of certiorari to review a judgment in

any case, civil or criminal, entered by a state court of last resort or a United States court of

appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the

judgment."). Those 90 days expired on June 10, 2012, which was a Sunday. Because the deadline fell on a Sunday, Petitioner had until close of business on June 11, 2012, to file a petition for certiorari with the Supreme Court. *See* FED. R. CIV. P. 6(a)(1)(C) (when a deadline expires on a Saturday, Sunday, or legal holiday, the deadline is automatically extended "until the end of the next day that is not a Saturday, Sunday, or legal holiday"). Petitioner never actually sought review in the Supreme Court (*see* R. 1, Pet. at 2), and therefore, his conviction became final for purposes of Section 2255(f)(1) on June 11, 2012, when the time expired for him to seek such review. *See Clay*, 537 U.S. at 527 ("Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").

Petitioner had one year from that date to seek federal habeas relief. 28 U.S.C. § 2255(f)(1). The Seventh Circuit has adopted the "anniversary rule," which affords petitioners "until the close of business on the anniversary date of the certiorari denial to file their habeas motion." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). When a petitioner does not seek review in the Supreme Court, the limitations period ends on the one-year anniversary of the date on which the time for seeking such review expired. *See United States v. Bahena*, 524 F. Supp. 2d 1027, 1029 (N.D. Ill. 2007) (where deadline ran for seeking certiorari on October 6, 2004, federal petition was due on October 6, 2005); *Morales v. United States*, No. 06 C 6219, 2007 WL 2343065, at *3 (N.D. Ill. June 21, 2007) (where deadline ran for seeking certiorari on October 31, 2005, federal petition was due on October 31, 2006); *see also Burns v. Pugh*, No. 09-C-1149, 2010 WL 2545701, at *1 (E.D. Wis. June 18, 2010) (where petitioner did not seek certiorari by December 10, 2008, his federal petition was due December 10, 2009 In Petitioner's case, this means that his petition was due by close of business on June 11, 2013. Because

Petitioner is incarcerated, he is entitled to the benefit of the prison mailbox rule, under which his petition is deemed "filed" on the date he delivers it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988); *Taylor v. Brown*, 787 F.3d 851, 858-59 (7th Cir. 2015). Petitioner certifies in his petition that he placed his petition in the prison mailing system on June 12, 2013—one day beyond the deadline. (R. 1, Pet. at 15.) Thus, the petition was not timely filed.[3]

The statute of limitations set forth in 28 U.S.C. § 2255(f) is not jurisdictional, and is therefore subject to equitable tolling in appropriate circumstances. *Nolan v. United States*, 358 F.3d 480, 483-84 (7th Cir. 2004). Nevertheless, equitable tolling is reserved for extraordinary situations and is "rarely granted." *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). A habeas petitioner is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted). A prisoner's *pro se* status or lack of knowledge of the law are not the type of extraordinary circumstances that warrant equitable tolling. *Tucker*, 538 F.3d at 735. Nor does a simple miscalculation of the deadline. *See Marcello*, 212 F.3d at 1010 ("The deadline simply was missed. That is not grounds for equitable tolling."); *Williams v. Sims*, 390 F.3d 958, 963-64 (7th Cir. 2004) (mistake by *pro se* prisoner in calculating the deadline for filing his habeas petition did not warrant equitable tolling).

---

[3] The Court presumes for purposes of this opinion that the amended petition filed in April 2015 would "relate back" to the original petition filed in June 2013. *See* FED. R. CIV. P. 15(c); *Mayle v. Felix*, 545 U.S. 644, 662-63 (2005). Petitioner appears to articulate the same grounds for relief in both petitions, only more clearly and with greater detail in the amended petition. *See Mayle*, 545 U.S. at 664 (claim will relate back to an earlier-filed habeas petition where the original and amended petitions "are tied to a common core of operative facts"). To the extent there are any new claims contained in the amended petition that were not raised in the original petition, they would be untimely by nearly two years. *See Mayle*, 545 U.S. at 662 (once the deadline has expired for seeking federal habeas relief, a petitioner cannot amend his petition to add new grounds for relief).

In his reply, Petitioner does not assert any grounds that might establish a basis for equitable tolling. Instead, he insists that his petition was timely filed; by his calculation, he had until June 13, 2013, to file his petition. (R. 29, Pet'r's Reply at 1-2.) For the reasons explained above, his calculation is incorrect. His petition was due no later than June 11, 2013, the one-year anniversary of the date his conviction became final. *See Clay*, 537 U.S. at 527; *Marcello*, 212 F.3d at 1010. It seems somewhat harsh that Petitioner would be precluded from seeking habeas relief because of this one-day delay, but as the Seventh Circuit observed in affirming the dismissal of a habeas petition filed one day beyond the deadline, "statutes of limitations protect important social interests" and "courts have to draw lines somewhere." *Marcello*, 212 F.3d at 1010; *see also Burns*, 2010 WL 2545701, at *1 (dismissing petition filed one day beyond the federal deadline). Because the petition was not timely filed, it must be dismissed.

## II.    Merits

Assuming that Petitioner could somehow overcome the timeliness bar, his claims would fail on the merits in any event. Petitioner claims that his appellate counsel was ineffective because he failed to raise five separate arguments that Petitioner believes would have resulted in his conviction being overturned. (R. 23, Am. Pet. at 11-25.)

Under the Sixth Amendment, a criminal defendant is entitled to "'effective assistance of counsel'—that is, representation that does not fall 'below an objective standard of reasonableness' in light of 'prevailing professional norms.'" *Bobby v. Van Hook*, 558 U.S. 4, 6 (2009) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To establish that his counsel was ineffective, the petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland*, 466 U.S. at 687. A petitioner must satisfy both prongs to obtain relief, and "there is no reason for a court deciding an

ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). In other words, counsel "need not be perfect, indeed not even very good, to be constitutionally adequate." *McAfee v. Thurmer*, 589 F.3d 353, 355-56 (7th Cir. 2009) (citation omitted); *see also Harrington*, 562 U.S. at 110 ("[T]here is no expectation that competent counsel will be a flawless strategist or tactician[.]"). In evaluating counsel's performance, the Court must avoid the benefit of hindsight and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011).

On the prejudice prong, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. Rather, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

A claim of ineffective assistance of appellate counsel is analyzed under this same two-part analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). On the deficiency prong, the petitioner must show that counsel failed to present a "significant and obvious issue" on appeal without a legitimate strategic reason for doing so. *Id.* at 790 (citation omitted).

Nevertheless, counsel is not required to "raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). On the prejudice prong, the petitioner must demonstrate that if the argument had been raised, there is "a reasonable probability" that his case would have been remanded for a new trial or otherwise modified on appeal. *Howard*, 225 F.3d at 790. If the argument the petitioner wanted his attorney to raise had no merit, he cannot establish prejudice: "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

### A.    Failure to Challenge the Sufficiency of the Evidence

Petitioner first argues that his appellate counsel should have challenged the sufficiency of the evidence. (R. 23, Am. Pet. at 11-15.) In Petitioner's view, there was insufficient evidence of his participation in the racketeering conspiracy to support the jury's verdict. (*Id.*) In challenging the sufficiency of the evidence on appeal, a defendant "bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010). The defendant must demonstrate that "even after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found him guilty beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted). In making this determination, the court of appeals will not "weigh the evidence or assess the credibility of witnesses." *United States v. Orozco-Vasquez*, 469 F.3d 1101, 1106 (7th Cir. 2006). The court will "reverse only when there is no evidence, no matter how it is weighed, from which a rational jury could find guilt beyond a reasonable doubt." *Id.*

Had Petitioner raised such a claim on appeal, we would have fallen far short of meeting that standard. To the contrary, the evidence of his participation in the racketeering conspiracy

was overwhelming. As the government summarized the evidence in response to Petitioner's motion for acquittal:

> (1) multiple cooperating gang members testified that Perez was an Insane Deuces gang member, having joined the gang in the early 1990s as a Shorty and then working his way up to the Junior rank; (2) an Aurora Police Department Officer testified that defendant Perez admitted to him in 2003 that he had been an Insane Deuces gang member since the early 1990s; and (3) defendant Perez had multiple Insane Deuces gang tattoos, including a tattoo of the number 2, the spade, and the letters ID above his heart and a tattoo of the earth that took up a significant portion of his back with the words "Deuce World" written underneath and a fist flashing the Insane Deuces gang sign punching through the top of the world.

(*United States v. Delatorre*, No. 03 CR 90, R. 1662 at 3.) There was also extensive evidence presented, including testimony from cooperating gang members and undercover recordings of gang meetings, of the gang's racketeering enterprise. The evidence established that one of the primary functions of the gang was to try to kill rival gang members and other perceived enemies of the gang. The evidence also established that Petitioner knowingly joined the conspiracy and was personally involved in multiple violent acts in furtherance of that conspiracy, including: the August 1995 attempted murder of Aaron Curry; the January 2002 attempted murder of Juan Ortiz; the January 2002 attempted murder of Osvaldo Delgado; the January 2002 attempted murders of Gerardo and Rodolpho Rios; the March 2002 shooting of two Latin King gang members; and the May 2003 shooting of Tomas Rivera. (*See* Trial Tr. at 325-36, 347-50, 484-513, 622-23, 664-708, 1123-26, 1915-57, 2028, 2126, 2527-30.)

Several of Petitioner's co-defendants raised sufficiency of the evidence claims on direct appeal, but based on the extensive evidence of the gang's illegal activities presented by the government, none of these arguments met with any success. *See Morales*, 655 F.3d at 634-42; *Benabe*, 436 F. App'x at 657-58. There is nothing to suggest that a similar argument by Petitioner would have fared any better. Petitioner appears to believe that the evidence was

equivocal regarding his participation in the various shootings referenced above; in his view, this meant that there was insufficient evidence to show that he committed two predicate acts in furtherance of the conspiracy. (R. 23, Am. Pet. at 12-14.) This Court, having sat through the trial, disagrees with Petitioner's characterization of the evidence. But in any event, his argument fails as a matter of law. As the Seventh Circuit held in rejecting a similar argument by one of Petitioner's co-defendants, the government did not have to prove that Petitioner personally committed *any* predicate acts in furtherance of the conspiracy for the jury to find him guilty. *Benabe*, 436 F. App'x at 657. Instead, it only had to prove "that he agreed that *someone* in the enterprise would commit at least two predicate of acts of racketeering." *Id.* at 658 (emphasis added); *see also United States v. Garcia*, 754 F.3d 460, 471 (7th Cir. 2014) ("A RICO conspiracy charge requires proof of two predicate acts, *or an agreement to commit those acts*, in furtherance of the conspiracy." (emphasis added)). Given Petitioner's long-time participation in the gang, the evidence on this point was more than sufficient. Because of the weakness of this argument, Petitioner has failed to establish that he was prejudiced by counsel's failure to raise it on appeal.

### B. Failure to Challenge the Admission of Evidence

Petitioner next claims that appellate counsel should have challenged the admission of evidence pertaining to violent acts, drug-dealing, "and other acts for which [Petitioner] was neither a participant in nor said to have knowledge of."[4] (R. 23, Am. Pet. at 16.) As discussed

---

[4] Within this claim, Petitioner purports to incorporate by reference various motions in limine, docket entries, and orders addressing a variety of evidentiary issues. (R. 23, Am. Pet. at 16.) But he does not identify which issues within these extraneous documents he believes appellate counsel should have raised. It is a basic requirement that a Section 2255 petition "specify all the grounds for relief," including providing "the facts supporting each ground." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2(b). This Court previously instructed Petitioner that he must clearly explain each argument he wanted appellate counsel to raise within his petition, and advised him that "[n]either this Court nor Respondent can be expected to scour the voluminous trial record in search of potential arguments that Petitioner might have asserted on direct appeal." (R. 16, Order at 3.) The Court therefore limits itself to considering only the specific argument he raises in the petition.

above, the government could prove Petitioner guilty of racketeering conspiracy by showing that

he agreed that some member of the conspiracy would commit at least two predicate acts of

racketeering, even if he did not commit those acts himself. *Benabe*, 436 F. App'x at 657-58.

Evidence that other members of the gang trafficked in drugs, possessed firearms, and committed

violent acts was thus relevant and necessary to prove the existence of the conspiracy, the pattern

of racketeering activity, and the connection of these activities to interstate commerce. *See* 18

U.S.C. § 1961(1); 18 U.S.C. § 1962(a), (d).

The Court considers that one of Petitioner's co-defendants raised a related argument—

without any success—that he should have been granted a severance because he was unduly

prejudiced by the admission of evidence pertaining to violent acts committed by other gang

members. *Morales*, 655 F.3d at 626-27. The Seventh Circuit held that because the charge

involved a conspiracy, "[t]he acts of violence forming the backbone of the gang's racketeering

activities would have been admissible against [the defendant] in a separate trial, even if he were

not accused of perpetrating those acts himself." *Id.* at 627. This same evidence was properly

admitted at Petitioner's trial. Because a challenge to this evidence would have had very little

likelihood of success, counsel's failure to make this argument cannot be considered ineffective

assistance.

C.     **Failure to Challenge Prosecutorial Misconduct**

In his third claim, Petitioner asserts that counsel was ineffective in failing to raise an

argument based on prosecutorial misconduct. (R. 23, Am. Pet. at 18-20.) Petitioner believes that

the prosecutor acted improperly when he told the jury during closing arguments that Petitioner

had the power to subpoena witnesses. (*Id.* at 18.) The prosecutor made the comment in question

during rebuttal in response to the defense closing. Petitioner's trial counsel, Herbert Hill, had

argued as follows regarding Rivera's credibility:

> . . . Mr. Rivera shot at people, and I went through painstakingly 26 of those
> circumstances for you to show you the sheer propensity that Mr. Rivera had, his
> absolute disdain and his absolute disregard for people, and his intent specifically
> with respect to each of them to kill them. . . . Let's assume the fact—for the sake
> of this argument that those things are true. And I do have some—some serious
> problem [sic] with respect to whether or not those things are true. They couldn't
> be tested. They could not be confirmed.
>
> These actions take place in 1990, 1991, 1992, 1993, all the way up to the time he
> becomes a Deuce, which is in 1995. Then they become more protracted. And the
> government's agencies could not check out these things that would have occurred
> 15, 16, 14 years ago to check the authenticity of those things, to corroborate their
> truth.

(Trial Tr. at 3147-48.) During rebuttal, the prosecutor argued:

> Orlando Rivera came into this courtroom and told you, and he went through, 36
> plus shootings I believe he went through. That chart, 47 shootings, there's one on
> there where he was shot. 47-plus shootings, attempted murders. He told you this is
> what I did.
>
> Mr. Hill wants you to believe, no, he's making it all up. He's making it up, or he's
> making some of it up. Not all of it because he still needs him for his argument to
> be a bad person so you don't believe him; but, yeah, so believe some of it, believe
> he's horrific, but not everything is true. And the reason he says not everything is
> true is because the government didn't present evidence of every one of those 47
> shootings. We would have been here 'til Christmas.
>
> And that's not what this case is. This case is what the Defendant Perez agreed to
> and what he did. The burden, beyond a reasonable doubt, rests right there on that
> table. I embrace it. It's ours, and we've proven our case beyond a reasonable
> doubt.
>
> But make no mistake about this, he doesn't have any obligation to put on a case,
> *but he has subpoena power. Could have brought witnesses in—*

(*Id.* at 3235 (emphasis added).) At that point defense counsel objected; this Court sustained the

objection and directed the prosecutor to continue. (*Id.* at 3235-36.) The prosecutor then

concluded by stating: "He has no obligation, no obligation. He could have. He didn't." (*Id.* at 3236.) He then proceeded to discuss other matters. (*Id.*)

In Petitioner's view, the prosecutor's comment that "he has subpoena power" and "[c]ould have brought witnesses in" improperly shifted the burden of proof to him in violation of the Sixth Amendment.[5] (R. 23, Am. Pet. at 18.) The Seventh Circuit has held several times that a prosecutor may tell the jury that a defendant has the power to subpoena witnesses, as long as it remains clear that the government has the burden of proof. *See, e.g., United States v. Miller*, 276 F.3d 370, 374-75 (7th Cir. 2002); *United States v. Aldaco*, 201 F.3d 979, 988-89 (7th Cir. 2000); *United States v. Sblendorio*, 830 F.2d 1382, 1393 (7th Cir. 1987). In Petitioner's case, the prosecutor prefaced his comment by telling the jury in plain language that the government bore the burden of proof. (Trial Tr. at 3235.) The Court also instructed the jury both at the outset of the case and after the close of the evidence that it was the government's burden to prove Petitioner guilty beyond a reasonable doubt. (Trial Tr. at 231-32 ("[T]he burden of proof is on the government. The defendant has no burden to prove his innocence or to present any evidence or to testify. . . . [T]he government must prove Mr. Perez's guilt beyond a reasonable doubt."); Trial Tr. at 3277 ("The government has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden of proof stays with the government through the case. A defendant is never required to prove his innocence or to produce any evidence at all.").) The Court must presume that jurors follow the instructions they are given. *Miller*, 276 F.3d at 375. Based on the applicable law, this brief comment by the prosecutor did not improperly shift the burden of proof to Petitioner.

---

[5] Petitioner also argues that the prosecutor's comment violated his rights under "Article I, § 2 of the Constitution of the State of Illinois." (R. 23, Am. Pet. at 18.) However, a claim based on state law is not cognizable in this federal habeas proceeding. *See* 28 U.S.C. § 2255(a) (providing that relief is available under the statute where prisoner establishes that his sentence was imposed "in violation of the Constitution or laws of the United States").

Petitioner also suggests that the prosecutor's remark constituted an improper comment on his failure to testify in violation of the Fifth Amendment. (R. 23, Am. Pet. at 19.) Because the defendant has a right to remain silent under the Fifth Amendment, the government is forbidden from commenting on a defendant's decision not to take the stand. *Griffin v. California*, 380 U.S. 609, 615 (1965). "Direct comment on a defendant's failure to testify is a *per se* Fifth Amendment violation." *United States v. Jones*, 600 F.3d 847, 856 (7th Cir. 2010). An *indirect* comment about a defendant's failure to testify will violate the Fifth Amendment if it was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Id.* (citation omitted).

The prosecutor did not directly comment on Petitioner's failure to take the stand. Taken in context, his brief remark cannot be reasonably viewed as an indirect comment on Petitioner's decision not to testify. Instead, the comment was a response to Petitioner's argument that Rivera's testimony "couldn't be tested," and that Rivera should not be believed because the government failed to corroborate some of his testimony about past events with independent witnesses and evidence. The prosecutor merely pointed out that Petitioner also had the ability to subpoena witnesses to verify Rivera's testimony had he chosen to do so. The prosecutor's comment did not in any way "invite the jury to infer guilt from the defendant's decision not to testify." *Sblendorio*, 830 F.2d at 1391. Nor was there any suggestion by the prosecutor that Petitioner should have personally contradicted Rivera's testimony; the reference was to other potential witnesses who may have had information about the events Rivera described. *See Jones*, 600 F.3d at 857 (comments about the ability of the defendant to offer evidence contradicting the government's evidence will violate the Fifth Amendment "only if a defendant is the only person

17

capable of contradicting . . . the evidence at issue" (citation and internal quotation marks omitted)). Based on the record, the Court does not find this comment improper.

Even if the comment was improper, to obtain a new trial on this ground Petitioner would have to show that the comment denied him a fair trial. *United States v. Wilbourn*, 799 F.3d 900, 914 (7th Cir. 2015). In assessing whether the defendant was unduly prejudiced by an improper comment, the Court must "consider the remarks in light of the entire record." *United States v. Richards*, 719 F.3d 746, 766 (7th Cir. 2013) (citation omitted). Factors to consider include: "(1) whether the prosecutor misstated evidence; (2) whether the statements implicate a specific right of the defendant; (3) whether the defense invited the prosecutor's remarks; (4) the trial court's instructions; (5) the weight of the evidence against the defendant; and (6) the defendant's opportunity to rebut." *Id.*

These factors weigh against a finding that the comment denied Petitioner a fair trial. The prosecutor did not misstate the evidence, and his comment was at best tangentially related to Petitioner's Fifth Amendment right to remain silent. It came in direct response to defense counsel's comment that Rivera's testimony "couldn't be tested." The jurors were twice instructed that Petitioner did not have to take the stand or present any evidence, and that they should not draw any adverse inference from his decision not to testify. (Trial Tr. at 231, 3277.) The evidence of Petitioner's guilt was overwhelming, and the prosecutor's brief comment was made in the context of closing arguments that spanned the course of two days. (*See* Trial Tr. at 3046-3133, 3223-63.) Even though Petitioner did not have an opportunity to rebut this comment, the Court finds it highly unlikely that the Seventh Circuit would conclude that this brief comment denied Petitioner a fair trial. *See United States v. Tucker*, 714 F.3d 1006, 1014-15 (7th Cir. 2013) (comment by prosecutor that indirectly related to defendant's decision not to take the

stand did not deny him a fair trial where jury was instructed that defendant "was not required to put on any evidence at all"); *Miller*, 276 F.3d at 375 ("[G]iven that the two minor incidents about which [defendant] complains occurred during an 8 day trial in which the government presented substantial evidence of her guilt, these alleged errors, if they were ever to be considered as errors at all, would have to be viewed as no more than harmless."). Based on the record, Petitioner has not established that counsel was ineffective in failing to raise this argument.

### D.    Failure to Challenge the Admission of his Prior Conviction

Petitioner next argues that counsel should have challenged the admission of evidence pertaining to his 1995 state conviction for aggravated battery with a firearm. (R. 23, Am. Pet. at 21-22.) Petitioner argues that this evidence constituted "other crimes" evidence that was inadmissible under Federal Rule of Criminal Procedure 404(b). (*Id.* at 21.) Under this Rule, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b). However, the Seventh Circuit has held that evidence pertaining to criminal conduct that is relevant to establishing the existence of or the defendant's participation in a racketeering conspiracy is not "other crimes" evidence within the meaning of Rule 404(b). *United States v. Adams*, 628 F.3d 407, 414 (7th Cir. 2010) ("[E]vidence directly pertaining to the defendant's role in a charged conspiracy is not excluded by Rule 404(b)."); *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("Rule 404(b) is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged." (citation omitted)). That is what the evidence was used for here: the 1995 firearms offense constituted direct evidence of Petitioner's participation in the racketeering conspiracy, as it involved the shooting of a suspected rival gang member during the relevant dates of the conspiracy. (Trial Tr. at 320-

40; R. 227, Second Superseding Indictment ¶ 9.) Therefore, a challenge to this evidence under Rule 404(b) would have been unavailing.

Petitioner also challenges the admission of this evidence under Rule 403, which does raise a legitimate argument. *See Adams*, 628 F.3d at 415 ("Even when the testimony is direct evidence of the charged conspiracy and Rule 404(b) is not involved, Rule 403 would still protect [the defendant] against evidence that is unduly prejudicial."). That Rule provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Petitioner believes the admission of his conviction resulted in unfair prejudice. (R. 23, Am. Pet. at 21.) Unfair prejudice in this context refers to "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

At the time of Petitioner's trial, this Court recognized the Rule 403 concerns implicated by Petitioner's prior conviction and balanced the competing interests at stake. (*See Delatorre*, No. 03 CR 90, R. 1509.) The evidence of the shooting was highly relevant to the government's conspiracy case, as it involved Petitioner shooting at someone whom he mistook for a rival gang member. (*See* Trial Tr. at 319-40.) The Court minimized the risk of unfair prejudice by admitting only Petitioner's sworn statement at the change-of-plea hearing in the state case acknowledging

his guilt, and the public court documents establishing the fact of his prior conviction.[6] (*Id.* at 2-4, 319-20, 361.) This evidence was presented in a brief manner during the government's case-in-chief. (*Id.* at 360-62.)

Had counsel challenged the admission of this evidence on appeal, the Court's evidentiary ruling would have been reviewed for abuse of discretion; under this deferential standard, the appellate court "will defer to the district court unless no reasonable person could adopt its view." *United States v. Schmitt*, 770 F.3d 524, 532 (7th Cir. 2014). This is a very high standard. *Id.*; *see also United States v. Coleman*, 179 F.3d 1056, 1061 (7th Cir. 1999) ("[A]ppellants who challenge evidentiary rulings of the district court are like rich men who wish to enter the Kingdom: their prospects compare with those of camels who wish to pass through the eye of the needle." (citation omitted)). It is very unlikely that Petitioner could have met that high standard in connection with the admission of his 1995 firearms conviction in this racketeering conspiracy case. *See Adams*, 628 F.3d at 416 (observing that the district court has "wide discretion" under Rule 403 and affirming the admission of evidence of defendant's prior criminal activity that was relevant to a conspiracy charge); *United States v. Dabney*, 498 F.3d 455, 457-59 (7th Cir. 2007) (in felon-in-possession-of-a-firearm case, district court was "well within its discretion" in admitting evidence of defendant's statements under oath in state criminal proceeding admitting to his possession of the gun).

Petitioner also wanted counsel to argue that the admission of this evidence violated the Double Jeopardy Clause. (R. 23, Am. Pet. at 21-22.) It appears that Petitioner believes his

---

[6] Prior to trial, the Court ruled that the government would only be permitted to introduce Petitioner's statements under oath at the change-of-plea hearing without referencing the prior conviction, but this ruling was based on an assumption that Petitioner would stipulate to the fact of his prior conviction. (*See Delatorre*, No. 03 CR 90, R. 1509.) Petitioner subsequently refused to stipulate that he had a prior conviction, making it necessary for the government to also introduce the charging document and judgment of conviction in the state case. (*See* Trial Tr. at 2-4, 319-20, 360-62.) A stipulation could have minimized the impact of this evidence, but Petitioner chose not to avail himself of this option. He therefore should not be heard to complain that the government introduced these additional documents at trial.

conviction should not have been used against him in the federal case because he was previously punished for this offense in state court. (*Id.*) However, the Seventh Circuit has held that use of a state conviction to prove predicate acts in a federal racketeering conspiracy case does not trigger double jeopardy concerns. *See United States v. Doyle*, 121 F.3d 1078, 1091 (7th Cir. 1997) (rejecting double jeopardy challenge to use of state convictions as predicate offenses in federal racketeering conspiracy case); *United States v. O'Connor*, 953 F.2d 338, 344 (7th Cir. 1992) ("A RICO offense is, of course, not in any sense the 'same' offense as the predicate offenses."). Thus, Petitioner has not established prejudice in connection with counsel's failure to raise these evidentiary challenges.

### E.    Failure to Challenge the Sentence Imposed

In his last claim, Petitioner argues that counsel should have challenged various sentencing errors on appeal. (R. 23, Am. Pet. at 22-25.) First, he argues that counsel should have challenged the Court's decision to hold him responsible for the violent acts of his co-defendants as part of his "relevant conduct." (*Id.* at 22-23.) In calculating a defendant's offense level under the Sentencing Guidelines, the Court must consider not only the offense of conviction but also any other conduct that is relevant to the offense.[7] U.S.S.G. § 1B1.3(a)(1); *Morales*, 655 F.3d at 635. For actions of a defendant's co-conspirators to be deemed part of his relevant conduct, those acts must have been reasonably foreseeable to the defendant. *Morales*, 655 F.3d at 635-36. Petitioner believes there was an insufficient basis for the Court to find that the violent acts of his co-conspirators were reasonably foreseeable to him. (R. 23, Am. Pet. at 23-24.)

---

[7] "[I]n the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," relevant conduct is defined as "all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

Several of Petitioner's co-defendants raised this same argument, and it was roundly rejected by the Seventh Circuit. *See Morales*, 655 F.3d at 636-42. As to defendant Lionel Lechuga, the Seventh Circuit held that the violent acts committed by other Insane Deuces were reasonably foreseeable to him "given his long-standing Insane Deuce affiliation, his pervasive familiarity with their objectives and methods, and his . . . involvement in planning their activities." *Id.* at 642. The Seventh Circuit also rejected a similar argument made by defendant Brian Hernandez, finding that despite the conflicts in the evidence, there was "sufficient, credible evidence" to show that Hernandez "embraced the entire scope of the racketeering conspiracy's activities and foresaw the violent acts of his co-conspirators." *Id.* at 638. Finally, as to Miguel Rodriguez, the Seventh Circuit held that there was no plain error in holding him responsible for the violent acts of other gang members based on the presentence report, which established that "each and every overt act of violence in connection with the RICO conspiracy, although perhaps not specifically agreed to by each and every defendant on every specific occasion, was nonetheless reasonably foreseeable to each and every defendant given the nature of their joint RICO enterprise." *Id.* at 636 (citation omitted).

This same reasoning applies to Petitioner. The evidence clearly established that Petitioner was an active and loyal member of the Insane Deuces for many years, and that he was fully immersed in the gang's culture of violence. As outlined in the government's sentencing memorandum, the evidence showed that Petitioner was involved in multiple shootings between 1995 and 2002. (*See* 03 CR 90, R. 1602, Gov't's Mem.) Indeed, as the government noted, "in a gang full of shooters . . . defendant Perez distinguished himself." (*Id.*, Sentencing Tr. at 24.) Based on the extensive evidence of Petitioner's involvement in the gang, there would have been

no merit to an argument that the violence committed by other gang members was unforeseeable to him.

Petitioner also wanted counsel to argue that the Court erred in determining that he was a career offender. (R. 23, Am. Pet. at 23-24.) To be categorized as a career offender, a defendant must be convicted of a controlled substance offense or a crime of violence after incurring at least two prior felony convictions for either a controlled substance offense or a crime of violence. U.S.S.G. § 4B1.1. However, only unrelated prior offenses count as a prior conviction. *See* U.S.S.G. § 4A1.2(a)(1) ("The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense."). This rule was intended in part "to avoid double counting" of a defendant's prior offenses—once when calculating his criminal history, and again when determining his relevant conduct. *United States v. Nance*, 611 F.3d 409, 412-13 (7th Cir. 2010) (citation omitted).

In Petitioner's view, his 1995 and 1998 convictions, both of which involved the aggravated discharge of a firearm, could not be counted against him for career offender purposes, because these offenses were part of the racketeering conspiracy itself. (R. 23, Am. Pet. at 23-24.) This issue was raised by Petitioner's counsel at the time of sentencing and was fully addressed by the Court. (Sentencing Tr. at 2-10.) As to the 1995 conviction—which stemmed from Petitioner's shooting of Curry—the government agreed that this conviction was part of the racketeering conspiracy. (*Id.* at 5.) However, as the prosecutor pointed out, the Guidelines contain a special rule in the case of racketeering conspiracies:

> Certain conduct may be charged in the count of conviction as part of a 'pattern of racketeering activity' even though the defendant has previously been sentenced for that conduct. Where such previously imposed sentence resulted from a

> conviction prior to the last overt act of the instant offense, treat as a prior sentence under § 4A1.2(a)(1) and not as part of the instant offense.

U.S.S.G. § 2E1.1, appl. n.4. The rationale behind this rule, as succinctly explained by the prosecutor at sentencing, is that in a case involving a lengthy conspiracy "you could have a defendant who is convicted multiple times during the lifetime of that conspiracy, and if it's treated as relevant conduct . . . you would be left at the end of the day with a defendant who has no criminal history points." (03 CR 90, Sentencing Tr. at 6.)

The conviction Petitioner challenges here occurred in 1995, and the government proved numerous overt acts in furtherance of the racketeering conspiracy after that date. *See Perez*, 673 F.3d at 668. Thus, under § 2E1.1, Petitioner's 1995 conviction should have been counted as part of his criminal history, but not as part of his relevant conduct. At sentencing, this Court confirmed that the presentence report properly counted Petitioner's 1995 conviction only in the context of his criminal history. (03 CR 90, Sentencing Tr. at 7-8.) The report did in fact treat the conviction properly, and the Court calculated Petitioner's sentence on that basis. (*Id.*) Thus, there was no improper double-counting as to the 1995 conviction.[8]

The Court considers that two of Petitioner's co-defendants raised this argument on appeal with no success. *See Morales*, 655 F.3d at 639; *Benabe*, 436 F. App'x at 661. Brian Hernandez challenged the Court's use of his four prior convictions to determine his criminal history, as he claimed these offenses were part of the racketeering conspiracy. *Morales*, 655 F.3d at 639. The Circuit held: "Because Hernandez was personally active in the racketeering conspiracy after the date of his most recent criminal conviction in July 2002, the district court did not err in including

---

[8] As a practical matter, Petitioner's status as a career offender had little actual significance in this case; based on the offense of conviction, which involved multiple murders and attempted murders in furtherance of a racketeering conspiracy, Petitioner's Guideline range was life in prison, regardless of his criminal history category. (*See* 03 CR 90, Sentencing Tr. at 8-10.) This Court did not impose the Guideline sentence, and instead sentenced Petitioner to 60 years. (*Id.* at 44-49.)

25

these four sentences in his criminal history." *Id.* Similarly, defendant Steven Susinka argued that his prior drug and firearms convictions were part of the conspiracy and thus could not be counted against him for criminal history purposes. *Benabe*, 436 F. App'x at 661. The Circuit rejected this argument too, concluding that these convictions were properly counted because they occurred in 2002, "and the Insane Deuces' racketeering activity continued well after that." *Id.* This same reasoning would defeat Petitioner's argument regarding his 1995 conviction.

As to Petitioner's 1998 conviction, the government never alleged that that this conviction was part of the racketeering conspiracy, nor was any evidence presented at trial regarding the facts underlying this conviction. There is nothing to reflect that the offense was related to the gang's activities, other than Petitioner's bare assertion. Indeed, the record suggests that this conviction arose from some type of domestic dispute. (Sentencing Tr. at 5.) Under these circumstances, Petitioner has not established that a challenge to this conviction under § 4A1.2(a)(1) would have had any merit. *See United States v. Hernandez*, 523 F. App'x 399, 400 (7th Cir. 2013) (argument based on § 4A1.2(a)(1) had no merit where was there was "no link whatsoever" between prior offense and current offense, other than defense counsel's "bare assertion" that the two cases involved the "same general activity"). Indeed, the Seventh Circuit rejected an identical argument made by Petitioner's co-defendant, Hernandez, because he failed to explain how his prior convictions "for aggravated battery of a school employee and domestic battery of his girlfriend" were sufficiently related to his federal racketeering offense. *Morales*, 655 F.3d at 639. Because Petitioner has not established a reasonable probability that his proposed sentencing challenges would have led to a different result on appeal, he has not established

prejudice in connection with counsel's failure to raise this argument. For these reasons, Petitioner is not entitled to habeas relief.[9]

## III. Certificate of Appealability

As a final matter, the Court must decide whether to grant Petitioner a certificate of appealability. *See* Rules Governing Section 2255 Cases, Rule 11. To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons outlined above, the Court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage Petitioner to proceed further. His petition was not timely filed and his claims fail on the merits. Accordingly, the Court declines to issue him a certificate of appealability.

---

[9] Within his reply brief, Petitioner requests that the Court conduct an evidentiary hearing on his petition. (R. 29, Pet'r's Reply at 3-4.) The Court need not hold a hearing under Section 2255 if the petition "and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (petitioner is entitled to a hearing in a Section 2255 case if he "alleges facts that, if proven, would entitle him to relief" (citation omitted)). Even accepting all of Petitioner's allegations as true, the records in this case establish that his petition is untimely, and that he was not deprived of his Sixth Amendment right to counsel. Thus, the Court need not conduct an evidentiary hearing in this case.

## CONCLUSION

For the foregoing reasons, the amended petition (R. 23) is DISMISSED WITH

PREJUDICE. Petitioner is DENIED a certificate of appealability.

ENTERED: 

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: December 22, 2015**